**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**BRANDON PUGH #165014**                                                                         **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 5:18-cv-32-DCB-MTP**

**JUSTIN GREEN,** *et al.*                                                      **DEFENDANTS**

<u>**REPORT AND RECOMMENDATION**</u>

THIS MATTER is before the Court on the Motion for Summary Judgment [50] filed by Defendants Justin Green and Chantel Woods. Having carefully considered the parties' submissions and the applicable law, the undersigned recommends that the Motion [50] be granted and that this action be dismissed with prejudice.

**FACTUAL BACKGROUND**

This lawsuit arises from events that took place while Plaintiff, proceeding *pro se* and *in forma pauperis*, was in the custody of the Mississippi Department of Corrections ("MDOC") at the Wilkinson County Correctional Facility ("WCCF"), a private prison run by Management Training Corporation ("MTC"). Plaintiff suffers from hidradenitis, a condition that causes his hair follicles to become infected, which leads to wounds on his scalp. Plaintiff had surgery on his scalp in response to this condition in 2015, while in MDOC custody. According to Plaintiff, the medical issue persisted in 2017 when he was housed at WCCF.

Plaintiff alleges that on November 21, 2017, he had the tray slot of his cell door open because he was expecting to be taken to the medical unit for treatment. Plaintiff asserts that Defendant Justin Green, an officer at WCCF, upon seeing Plaintiff's tray slot open, pulled out his mace and threatened to spray Plaintiff if he did not close his tray slot. Plaintiff tried to explain that another officer left the tray slot open because Plaintiff was supposed to be taken to

1

the medical department later that day, but Defendant Green did not listen.  Plaintiff then closed the tray slot and was not taken for medical care that day.

About two weeks after the November 21, 2017 altercation with Defendant Green, Plaintiff passed out in his cell and was taken to the medical unit.  Dr. Burke, the prison doctor, gave Plaintiff soap and gauze to clean his head and told Plaintiff further medical appointments would be scheduled.  Plaintiff alleges that Defendant Green denied him medical attention at least seven times between November 21, 2017 and January 31, 2018 when Plaintiff had surgery on his scalp at Central Mississippi Medical Center.  It is Plaintiff's position that his condition may not have progressed if he had been provided medical care sooner.  Plaintiff also alleges that Defendant Green denied him food trays on multiple occasions for a two-week period starting November 17, 2017.

Plaintiff also sues Defendant Chantel Woods for denying him medical care and denying him food trays.  Plaintiff alleges that Defendant Woods denied him medical attention about four or five times but does not remember the dates and, as a result, the infections on his scalp worsened.  Defendant Woods also allegedly denied him food trays on unspecified dates and Plaintiff claims he lost weight.

On April 23, 2019, the Court held a *Spears*[1] hearing to clarify Plaintiff's claims.  *See* Order [42].  On August 1, 2019, Defendants Green and Woods filed their Motion for Summary Judgement [50].  Plaintiff has not responded to the Motion for Summary Judgment and the time for doing so has passed.  This matter is ripe for review.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

## ANALYSIS

### *Summary Judgment Standard*

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). The Court must view the evidence in the light most favorable to the non-moving party. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

### *Delayed Medical Care*

The parties agree that Plaintiff suffers from hidradenitis, and that he has undergone two surgeries to treat the condition while in MDOC custody. The parties dispute, however, whether the alleged delay in medical care caused by Defendants Green and Woods resulted in a substantial injury to Plaintiff, such that his constitutional rights were violated.

"In order to show that his medical care violated the Eighth Amendment, [the plaintiff] must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain…." *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997). "[M]ere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018). "To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that [he] suffered a substantial harm resulting from the delay." *Campbell v. McMillin*, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). "In all but simple and routine cases… it is necessary to establish medical causation by expert testimony." *Id.* (citation omitted); *see also Bonner v. Hinds County*, 2016 WL 1260789, at *5-7 (S.D. Miss. Mar. 30, 2016).

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegation of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Plaintiff did not respond to the Summary Judgment Motion, and the uncontested evidence demonstrates that Plaintiff received extensive medical treatment for his hidradenitis.[2] For example, Plaintiff was seen on September 1, 2017 by the physician at WCCF, Dr. Burke, who examined Plaintiff's head and recommended local wound care and Hibicelens, an antimicrobial skin cleanser. Mot. [50], Ex. B at 201, 203.

On November 9, 2017, Plaintiff submitted a sick call and was seen by Dr. Burke the next day. *Id.* at 211-12. Dr. Burke recommended that the dressing on Plaintiff's head be changed

---

[2] In addition to treatment for his head wounds, the record is replete with documentation of mental health and dental treatment Plaintiff also received while at WCCF.

4

daily and that the wounds be packed with dry gauze. *Id*. at 212. Plaintiff's dressings were then changed as directed by the doctor from November 11-13. *Id*. at 214-216.

Plaintiff was then seen again by Dr. Burke on November 16, 2017. *Id*. at 221. His wound was clean and did not have drainage, but Dr. Burke noted that Plaintiff may have hidradenitis. *Id*. Dr. Burke recommended that Plaintiff clip his hair short and use Selenium shampoo daily. *Id*.

Plaintiff had a follow-up appointment scheduled with Dr. Burke on November 21, 2017. However, he was not taken to this appointment. Plaintiff alleges that Defendant Green refused to take him to the medical unit that day, but Defendants submit that Plaintiff was "on the pod being disruptive"[3] and Defendant Green did not believe that Plaintiff could be brought to the medical unit in a safe manner. *Id*. at 225. Dr. Burke noted that it was "[n]ot an emergent situation" and Plaintiff could be brought for medical care when he was more compliant. *Id*. Nevertheless, this dispute is not material because Plaintiff was seen by Dr. Burke seven days later on November 28, 2017. *Id*. at 232; *see Perry v. Crockett*, 2010 WL 1427634 (S.D. Miss. Apr. 9, 2010) (holding that a five-day delay in receiving surgery for a broken wrist did not demonstrate deliberate indifference to a serious medical need). He was also seen by Dr. Burke on December 1 and 21, 2017. *Id*. at 238, 254.

On January 5, 2018, Plaintiff was taken to Central Mississippi Medical Center in Jackson and evaluated by Dr. Rooks regarding his scalp issues. Mot. [50], Ex. C at 38. Dr. Rooks recommended that the abscess on Plaintiff's scalp be excised. *Id*. This surgery was performed at

---

[3] Plaintiff was housed in long-term segregation at the time for stabbing another inmate. Mot. [50], Ex. A at 25.

Central Mississippi Medical Center on January 31, 2018. *Id*. at 39. Plaintiff was then transferred to Mississippi State Penitentiary on February 5, 2018. Mot. [50], Ex. B at 303-304.

The undisputed record shows that Plaintiff received extensive medical care and was ultimately taken to a private provider for surgery. Plaintiff's vague assertions that Defendants denied him medical care on several occasions is rebutted by the substantial medical records. Additionally, Plaintiff has neither demonstrated how any delay in medical treatment substantially harmed him nor submitted any medical or other evidence to support a claim that he was substantially harmed. *See Campbell*, 83 F. Supp. 2d at 766 (requiring an expert opinion to establish medical causation in § 1983 action). Plaintiff specifically testified that he did not have proof that any delay in receiving treatment or surgery caused his condition to worsen. Mot. [50], Ex. A at 20-21. For these reasons, Defendants are entitled to summary judgment on Plaintiff's claims that he was injured by delayed medical care.

***Denial of Food***

Plaintiff also alleges that Defendants Green and Woods sporadically denied him food trays for a two-week period in November 2017. *See* Mot. [50], Ex. A at 22, 28. Plaintiff testified, however, that he did not accurately count how many times he was denied meals, but he estimates it was about four or five times. *Id*. at 28. This, Plaintiff claims, caused him to lose weight and he was put on a special diet with double food portions to regain the weight. *Id*. at 29.

Defendants also move for summary judgment on this issue and assert that Plaintiff's claim regarding his meals does not rise to the level of a constitutional violation. They also

submit that the summary judgment evidence shows that Plaintiff's weight remained steady during the relevant time period.[4]

"The Eighth Amendment, which prohibits the imposition of cruel and unusual punishment, requires that inmates be provided well-balanced meals with sufficient nutritional value to preserve health." *Reeves v. King*, 2015 WL 461685, at *6 (S.D. Miss. Feb. 4, 2015) (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measures of life's necessities." *Berry*, 192 F.3d at 707 (quotation and citation omitted). An inmate's constitutional rights are not violated if he misses an occasional meal. *Reeves*, 2015 WL 461685, at *6; *see also Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Missing a mere one of out every nine meals is hardly more than missed by many working citizens over the same period"). Even on a regular, permanent basis, two meals a day may be adequate. *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986).

Even taking Plaintiff's allegations as true, that he was occasionally denied meals for a two-week period, he has not established an Eighth Amendment claim. The uncontested record demonstrates that Plaintiff did not lose weight during this time period; rather, he gained weight. Missing an occasional meal does not rise to the level of a constitutional violation. Plaintiff was not denied the "minimal civilized measures of life necessities." *Berry*, 192 F.3d at 707 (quotation

---

[4] Plaintiff's medical records show that the he weighed 141 pounds on May 19, 2017. Mot. [50], Ex. B at 161. On September 1, 2017, Plaintiff weighed 144 pounds. *Id*. at 201. On November 28, 2017, Plaintiff weighted 145 pounds. *Id*. at 277. On January 31, 2018, Plaintiff weighed 154 pounds. *Id*. at 287. On February 5, 2018, Plaintiff weighed 158 pounds. *Id*. at 304. These records show that Plaintiff steadily gained weight over the course of almost a year and during the time Plaintiff claims Defendants occasionally denied him food.

and citation omitted). Defendants, therefore, are also entitled to summary judgment on Plaintiff's claim that he was denied food.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Defendants' Motion for Summary Judgment [50] be GRANTED and that this action be DISMISSED with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 27th day of January, 2020.

s/ Michael T. Parker  
United States Magistrate Judge